DICKEY *against* SCHREIDER and another administrators of PUTMAN.    *Chambers-burg.*

IN ERROR.    *Friday,*
               *October 3.*

ERROR to the Court of Common Pleas of *Bedford* county.

*Peter Putman*'s administrators, the plaintiffs below, brought this action of covenant against *John Dickey* and *William Ward*, founded on articles of agreement.

On a demurrer to evidence, every fact is taken *pro confesso,* which the jury might with the least degree of propriety have inferred from the evidence. Where the defendant agreed on a sale of land, to refund the money, in case the plaintiff could not hold the land by law, but after an action and trial at Court should lose the same, *held* that where an ejectment was afterwards brought for the land by one of several heirs, and after a jury sworn, the attorney of the plaintiff, (who had given notice to the defendant,) being convinced, that the title of the plaintiff was not good, fairly and *bona fide* made a compromise, and a verdict was taken for the plaintiff in the ejectment by agreement, the plaintiff is not bound to stand other ejectments, but may demand repayment of his money.

An agreement to enter an amicable action was signed by one defendant in a suit against two, stipulating, that the defendants should plead *instanter*: a narr. was filed against both, and plea was afterwards entered, defendant pleads, &c. the replication was, they have not performed, &c. *Held* that both defendants had appeared and pleaded.

1817.        It was an amicable action, in which *Peter Putman*'s admi-
nistrators were plaintiffs, and *John Dickey* and *William
Ward*, defendants, entered in pursuance of an agreement in
writing, signed by the attorney for the plaintiffs, and by
*John Dickey*, stipulating, that a declaration should be filed,
and the defendants plead *instanter*. A declaration was filed
against *Dickey* and *Ward;* and the following were entered
as the pleadings. " Defendant pleads covenants performed,
" with leave to add and alter, and leave to give the special
" matter in evidence. Replication, that they have not per-
" formed the covenants, &c. Issue, &c. 7th *January*, 1814,
" on motion, *John Dickey* pleads *non infregit conventiones.*
" Plaintiffs reply, that he hath broken his covenants, &c. Is-
" sue, &c."

<div style="margin-left:2em">Dickey<br>
*v.*<br>
Schreider<br>
and another<br>
administrators<br>
of Putman.</div>

The action was founded on articles of agreement to the
following effect. The defendants engaged to refund to *Put-
man*, all money which he should pay to them for a tract of
land which he had purchased of them, together with lawful
interest on the same, " in case the said *Putman*, could not
" hold the said land by law, but after an action brought and
" trial at Court, the said *Putman* should lose the same."
The defendants demurred to the plaintiffs' evidence, and the
plaintiffs joined in demurrer. Judgment in the Court below
was given for the plaintiffs. The evidence was to the fol-
lowing effect.

A certain *George Fry*, brought an ejectment against *Put-
man*, for the land which he had purchased of the defendants.
*Putman* employed *James Riddle*, esq. as his attorney to de-
fend the suit. Mr. *Riddle* examined the title which de-
pended on a sale for taxes by the commissioners of *Bedford*
county, and was of opinion, that the sale was irregular and
void; and, therefore, *Fry* would recover in the ejectment,
if he could prove that the title was in him or those under
whom he claimed at the time of the sale for taxes. At *Put-
man*'s request, Mr. *Riddle* gave notice of the ejectment
to *Dickey*, and had a conversation with him, in which he in-
formed him of his opinion of the title, in which opinion
*Dickey* concurred. The trial of the ejectment afterwards
came on, and the plaintiff, *Fry*, proved a title in his father
*George Fry*, deceased, who died intestate, leaving six children.
Mr. *Riddle* finding, that the plaintiff *Fry*, would certainly
recover part of the land but not the whole, (because part be-

longed to the brothers and sisters of the said *Fry*,) made an agreement, that a verdict should be taken for *Fry*, for the whole land, on condition, that he should pay the value of the improvements which had been made by *Putman*, and also refund the money which had been paid for taxes. A verdict was taken according to this agreement. It did not appear, that judgment was entered on the verdict; but *Fry* was let into the possession of the land, and one of the witnesses said, that it was delivered to him by the sheriff. *James Riddle*, whose deposition was read, declared, that he informed *Dickey* of the proceedings on the trial of this ejectment, who expressed no disapprobation; on the contrary, he offered to refund to *Putman* one half of what had been received of him, but refused to refund that part which had been received by his partner *Ward*. This offer was rejected by *James Riddle*, the attorney of *Putman*. *Riddle* swore also, that there was no collusion between *Fry* and *Putman*, but that *Putman* was anxious to defend himself against *Fry* to the utmost of his power.

1817.

DICKEY
*v.*
SCHREIDER
and another
administrators
of PUTMAN.

*S. Riddle*, for the plaintiff in error. Each party knew, that the title under commissioners sale for taxes was doubtful; and the agreement was, that if *Putman* was evicted, *Dickey* and *Ward* should refund the purchase money. But *Putman* consented to a verdict against him, knowing, that the person who was plaintiff in ejectment, could not recover more than one-sixth of the land. The verdict and judgment against *Putman* were not adverse but by agreement. No writ of possession was taken out; so that there was no eviction. *James Riddle* only proves, that *Dickey* said he knew the commissioners title to be defective; he did not confess that *Fry*'s title was good. *Putman* gave up five-sixths of the land to which the plaintiff in the ejectment could not make title; and for which, for aught that appears, he might never have been sued. At any rate there is a mis-trial in this case. *William Ward* was never a party to this suit. He never pleaded.

*Tod*, for the defendants in error. *James Riddle* is to be considered as counsel for *Dickey* in *Fry*'s suit. It would be unreasonable to require, that *Putman* should be at the trouble of defending five other suits

1817.

DICKEY
*v.*
SCHREIDER
and another
administrators
of PUTMAN.

against a title which he knew to be good. The articles of agreement do not oblige him to do it. The great point to be established was, whether he could hold the land. A covenant of warranty is considered as broken by proof of better title, and the land may be given up without suit. 4 *Mass. Rep.* 349. Here, as there is a demurrer to the evidence, every inference which the jury might fairly draw from the evidence, is to be taken as admitted. *Phill. Ev.* 216. 1 *Johns.* 241. 2 *Esp. N. P.* 582, 3. *Hen.* & *Munf.* 60. 2 *Tid.* 782. 791. 5 *Johns.* 22. 1 *Johns.* 161. 173. *Dickey* admitted himself liable for one half the money, and offered to pay it. Notice of this suit was given by *James Riddle* to *Dickey.* If he did not intend to let him manage it, he should have said so.

*S. Riddle,* in reply. I admit, that every fact is confessed which the jury could with any kind of propriety have inferred. But here was no fact to justify an inference of eviction ; of judgment ; or of verdict. There was nothing but a verdict taken by consent. The agreement stipulates expressly for a loss of the land in consequence of a trial at law. The offer of the defendant to pay one half by way of compromise, is not a circumstance from which consent can be inferred.

TILGHMAN C. J. (After stating the case.) He that demurs to *parol* evidence, engages in an uphill business. For, every fact is taken *pro confesso,* which the jury might, with the least degree of propriety, have inferred from his evidence. The Court is not nicely to weigh the evidence, and decide according to the turn of the balance. If that were the law, the trial by jury would be destroyed. It never was intended, that by a demurrer, the Court should become triers of fact. Their office remains unchanged. *Ad questiones facti, non respondent judices.* This principle is well established ; for the Court has had occasion to consider the subject maturely, in several cases which have occurred on demurrers to evidence. The question then will be, whether, from the evidence in this case, the jury might not have inferred the consent of *Dickey,* to the proceedings in the ejectment brought by *Fry.* I cannot say, that they might not have inferred it ; for Mr. *Riddle* may be considered himself as acting both for *Putman* and *Dickey,* although, according to the articles of agreement, *Putman*

bore the whole expense of the ejectment. What was done at the trial, was by no means injurious to *Dickey* and *Ward*. We must presume, that there was a strong disposition in *Putman*, to withstand the claim of *Fry*, and that the compromise was not made, until *Fry* had given evidence sufficient, beyond doubt, to establish his title. It is true, that *Fry* could not have recovered the *whole* land, but having shewn title in his deceased father, I cannot think that it was incumbent on *Putman*, according to the spirit of his agreement with *Dickey* and *Ward*, to withhold the possession from the heirs of *George Fry*, the father, till each of them had brought a separate ejectment. This fighting for the ground, inch by inch, was not the intention of the parties. If *Putman* was under the necessity of supporting five or six ejectments, it would have cost him more than the land was worth; and all to no purpose. I rather think, that according to the fair construction of the articles of agreement, it was sufficient, if it was proved *on one trial*, that *Putman could not hold the land by law*, (these are the words of the articles.) It does not appear, that any concession was made by *Putman*, in derogation of the title derived from *Dickey* and *Ward*, or in favour of *George Fry*'s title; or that there was any mention of a compromise, untill *Fry* had established his title, to the satisfaction of *James Riddle*. Considering, then, that every thing was transacted fairly, and with the best intention, and that *Dickey* so far ratified the proceedings as to offer to pay his half of the money, I am of opinion, that the jury might have inferred, that the land was lost after a trial at law, within the meaning of the articles of agreement. Whether the plaintiffs in this suit were entitled to recover to the full amount of the whole purchase money paid to *Dickey* and *Ward*, is not material; the *quantum* of damages is unconnected with the demurrer to the evidence. If the plaintiffs were entitled to *any damages*, they must have judgment on the demurrer, so that if even if *Putman* was wrong in surrendering the *whole* land, yet he would be entitled to judgment, because *Fry* had shewn title in himself to one-sixth part, and consequently the plaintiffs should recover *pro tanto*.

The plaintiff in error, makes another exception. He says, that *William Ward* never joined issue, and therefore the suit was discontinued in the Court of Common Pleas. This exception comes with rather an ill grace from the mouth of

1817.

DICKEY
*v.*
SCHREIDER
and another
administrators
of PUTMAN.

1817.

DICKEY
v.
SCHREIDER
and another
administrators
of PUTMAN.

Mr. *Dickey,* who signed an agreement for the entry of an amicable action, in which *he* and *Ward were defendants;* the agreement was, that the *defendants should plead instanter, and the cause be put down for trial at the next Court.* The plaintiffs filed a declaration against *both defendants,* the short entry on the docket is, *the defendant pleads* covenants performed; replication, that *they have not performed the covenants and issue.* Now taking this altogether, there clearly appears a clerical error; the replication being, *they have* not performed, &c. I should conclude, that the clerk ought to have entered the *defendants plead,* instead of the *defendant pleads.* We know with what inaccuracy these short entries are made, and must construe them with great latitude to effect justice; otherwise few records would stand. From a view of the whole record, it appears to me, that both defendants appeared and pleaded. I am therefore of opinion, that the judgment should be affirmed.

GIBSON J. concurred.

DUNCAN J. concurred.

Judgment affirmed.